United States District Court
District of Connecticut
FILED AT

Kevin F.

B Rodwe, 04

Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

ALLSTATE INSURANCE   :
COMPANY   :
a/s/o JAMES F. LUCE, JR., and   :
SIGURLIM LUCE,   :    CIVIL ACTION NO.
  :    303 CV 00604 (JBA)
    Plaintiffs,   :
  :
    v.   :    Dated: May 3, 2004
  :
TOASTMASTER INC.,   :
  :
    Defendant.   :


**DEFENDANT TOASTMASTER INC.'S MEMORANDUM OF LAW IN
SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY OF
PLAINTIFFS'
EXPERT WITNESS, FRED PAUL III, AND FOR SUMMARY JUDGMENT**

CARMODY & TORRANCE LLP    50 Leavenworth Street
Attorneys at Law        Post Office Box 1110
           Waterbury, CT 06721-1110
           Telephone: 203 573-1200
21176063

## TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................................... 1

II.     FACTUAL BACKGROUND ........................................................................................ 2

        A.      The April 16, 2001 Fire........................................................................................ 2

        B.      Background And Anticipated Testimony Of Plaintiffs' Expert, Fred
        Paul III............................................................................................................................... 2

                1.      Paul proposes to opine at trial that the subject toaster oven's
                        electronic control board malfunctioned and ignited the fire. ...................... 2

                2.      Paul has no training as an electrical engineer. ........................................... 4

                3.      Paul has no experience with toaster ovens or toaster oven fires. ............... 5

                4.      Paul has insufficient facts to support his theory that a
                        malfunction of the electronic control board caused the subject
                        toaster oven to overheat and ignite nearby combustibles........................... 6

                5.      Paul lacks any external indicia of reliability for his theory of
                        ignition. ...................................................................................................... 8

III.    ARGUMENT AND AUTHORITIES ........................................................................... 8

        A.      Plaintiffs' Expert's Testimony Must Meet The Standards For
        Sufficiency Under Federal Rule Of Evidence 702........................................................... 8

        B.      Plaintiffs Have The Burden Of Proving The Admissibility Of Their
        Expert's Proposed Testimony. ......................................................................................... 9

        C.      Plaintiffs' Expert's Testimony Does Not Satisfy The Exacting
        Standards Of Reliability And Relevance Established By *Daubert* And,
        Therefore, Should Be Excluded Under F.R.E. 702......................................................... 10

                1.      Paul is not qualified to testify about electrical engineering or
                        small household appliances.................................................................... 10

CARMODY & TORRANCE LLP        50 Leavenworth Street
Attorneys at Law              Post Office Box 1110
                              Waterbury, CT 06721-1110
21176063                      Telephone: 203 573-1200

2.  Paul should not be allowed to testify because his opinions are not sufficiently reliable under the *Daubert* factors. ................................. 14

3.  Paul should not be allowed to testify because his opinions are not sufficiently reliable under the other non-*Daubert* Factors. ................. 22

4.  Paul's Opinions In His Report Are Different Than His Deposition, Which Makes His Testimony Unreliable. ............................ 24

D.  Plaintiffs Cannot Establish A Submissible Case Without The Testimony Of An Expert ............................................................................................. 25

IV.  CONCLUSION ............................................................................................. 26

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Berry v. Crown Equipment Corp.*,
    108 F.Supp.2d 743 (E.D.Mich. 2000) ................................................................. 12, 13

*Boyles v. American Cyanamid Co.*,
    796 F.Supp. 704 (E.D.N.Y. 1992) ........................................................................ 20

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .............................................................................................. 20

*Chapman v. Maytag Corp.*,
    297 F.3d 682 (7th Cir. 2002) ....................................................................... 12, 13, 18

*Clarke v. LR Systems*,
    219 F.Supp.2d 323 (E.D.N.Y. 2002) .................................................................... 17

*Coffey v. Dowley Manufacturing, Inc.*,
    187 F.Supp.2d 958 (M.D.Tenn. 2002) ................................................................. 17

*Comer v. American Electric Power*,
    63 F. Supp.2d 927 (N.D.Ind. 1999) ...................................................................... 20

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993) ...................................................................................... 7, 8, 20, 21

*Daubert v. Merrill Dow Pharmaceuticals, Inc.*,
    43 F.3d 1311 (9th Cir. 1995) .......................................................................... 18, 20

*General Electric Co. v. Ingram*,
    513 U.S. 1190 (1995) ............................................................................................. 9

*General Electric Co. v. Joiner*,
    522 U.S. 136 (1997) .......................................................................................... 8, 16

*In re Joint E. & S. District Asbestos Litigation*,
    52 F.3d 1124 (2d Cir. 1995) ................................................................................. 7

CARMODY & TORRANCE LLP        50 Leavenworth Street
Attorneys at Law              Post Office Box 1110
                              Waterbury, CT 06721-1110
21176063                      Telephone: 203 573-1200

*In re Paoli Railroad Yard PCB Litigation,*
    35 F.3d 717 (3d Cir. 1994)...................................................................................9

*In re TMI Litigation Cases Consolidated II,*
    922 F. Supp. 997 (M.D.Pa. 1996) ........................................................ 20


*Kerrigan v. Maxon Industries,*
    223 F.Supp.2d 626 (E.D.Pa. 2002) .....................................................9

*Knotts v. Black & Decker, Inc.,*
    204 F. Supp.2d 1029 (N.D. Ohio 2002)........................................................ 15

*Kumho Tire Co. v. Carmichael,*
    526 U.S. 137, 141 (1999) ......................................................... 7, 9, 18

*McCullock v. H.B. Fuller Co.,*
    61 F.3d 1038 (2d Cir. 1995)................................................................7

*Meyers v. Arcudi,*
    947 F.Supp. 581 (D. Conn. 1996) ............................................... 17, 18

*Nook v. Long Island R.R. Co.,*
    190 F.Supp.2d 639 (S.D.N.Y. 2002)................................................8

*Peitzmeier v. Hennessy Industries, Inc.,*
    97 F.3d 293 (8th Cir. 1996).................................................................. 17

*Perkins v. Origin Medsystems, Inc.,*
    299 F.Supp.2d 45 (D. Conn. 2004) ................................... 16, 17, 18

*Pride v. BIC Corp.,*
    218 F.3d 566 (6th Cir. 2000)................................................................ 18

*Samuel v. Ford Motor Co.,*
    96 F.Supp.2d 491 (D.Md. 2000) .................................................... 18

*Schmaltz v. Norfolk & Western Railway Co.,*
    878 F.Supp. 1119 (N.D.Ill. 1995) .................................................... 12

CARMODY & TORRANCE LLP       50 Leavenworth Street
Attorneys at Law             Post Office Box 1110
                             Waterbury, CT 06721 ⌐ h}0_
                             Telephone: 203 573-1200
21176063

*Sheehan v. Daily Racing Form, Inc.*,
   104 F.3d 940 (7th Cir.), *cert. denied*, 521 U.S. 1104 (1997) ............................................. 18

*Shreve v. Sears, Roebuck & Co.*,
   166 F.Supp.2d 378 (D.Md. 2001) ...................................................................................... 9

*Stagl v. Delta Air Lines, Inc.*,
   117 F.3d 76 (2d Cir. 1997)................................................................................................ 10

*Stanczyk v. Black & Decker, Inc.*,
   836 F.Supp. 565 (N.D.Ill. 1993) ................................................................................. 12, 14

*Trumps v. Toastmaster, Inc.*,
   969 F.Supp. 247 (S.D.N.Y. 1997).............................................................. 9, 10, 13, 14, 20

*United States v. Dorsey*,
   45 F.3d 809 (4th Cir.) *cert. denied*, 515 U.S. 1168 (1995)................................................ 18

*United States v. Kwong*,
   69 F.3d 663 (2d Cir. 1995)................................................................................................. 7

*Weisgram v. Marley Co.*,
   169 F.3d 514 (8th Cir. 1999), *aff'd*, 528 U.S. 440 ...................................................... 9, 19

*Weisgram v. Marley Co.*,
   528 U.S. 440 (2000) ......................................................................................................... 7

**STATE CASES**

*LePage v. Horne*,
   809 A.2d 505, 511 (Conn. 2002)...................................................................................... 20

*Sharp v. Wyatt, Inc.*,
   627 A.2d 1347, 1352 (Conn. App. 1993).......................................................................... 20

**FEDERAL RULES OF EVIDENCE**

F.R.E. 104(a) ............................................................................................................... 7, 8, 11

CARMODY & TORRANCE LLP   50 Leavenworth Street
Attorneys at Law   Post Office Box 1110
   Waterbury, CT 06721-1110
21176063   Telephone: 203 573-1200

F.R.E. 702(a) .................................................................................................... 6, 7, 8, 14, 21

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721- viii -
Telephone: 203 573-1200

## I.    INTRODUCTION

This is a products liability case involving a kitchen fire allegedly caused by a Toastmaster toaster oven.  Plaintiff Allstate Insurance Company, as subrogee to James and Sigurlim Luce (hereafter "Plaintiffs") seek to admit expert testimony of Fred Paul III ("Paul") to testify concerning electrical engineering issues.  Paul, however, is not qualified to render electrical engineering testimony and his opinions are not admissible because they are not sufficiently reliable.  Without expert testimony, Plaintiffs cannot prove a product defect, which is an essential element of their case.  Toastmaster is therefore entitled to summary judgment.

Paul is the only expert witness designated by Plaintiffs in this case.  Paul proposes to provide testimony on the cause and origin of the fire and that a defect in a Toastmaster toaster oven caused the fire.  Paul claims the toaster oven's electronic control board malfunctioned, which allowed it to operate continuously, causing some unknown combustibles behind or above the toaster oven to ignite and start the fire. Paul further contends that the toaster oven lacked proper clearance warnings, allowing it to be used too close to the Luce's kitchen cabinets.

Plaintiffs' expert is unqualified to offer these opinions because he is not an electrical engineer and has no experience with small appliances.  His proposed opinions regarding the supposedly defective nature of the toaster oven and the ignition scenario are unreliable because he has not performed any testing to support his theories.  Further, Plaintiffs' expert does not know the potential error rate of his

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

theories, follows no standards that control his method of fire investigation, and does

not know whether his theories are generally accepted in the scientific community.

## II.     FACTUAL BACKGROUND

### A.     The April 16, 2001 Fire

On April 16, 2001 at 12:26 p.m., the Vernon Fire Department responded to a

fire at the residence of James F. and Sigurlim Luce (the "Luces"), 321 Phoenix Street,

Vernon, Connecticut. (Complaint at ¶ 6.) The fire caused damage to the Luces' real

and personal property. (*Id.* at ¶ 7.) Plaintiffs allege that the fire was caused by a

Toastmaster Model 342 Toaster-Oven-Broiler (the "subject toaster oven") that was in

the Luces' kitchen when the fire occurred. (*Id.* at ¶¶ 6, 12, 14.) Toastmaster denies

these allegations. (Toastmaster's Answer and Affirmative Defenses.)

### B.     Background And Anticipated Testimony Of Plaintiffs' Expert, Fred Paul III

#### 1.     Paul proposes to opine at trial that the subject toaster oven's electronic control board malfunctioned and ignited the fire.

Paul intends to opine at trial that "the fire origin was in the area above [the

subject toaster oven]" and that "the fire started as a result of overheating of [the

subject toaster oven]." (Paul Report, at pp. 7, 9.) Paul proposes to support these

opinions based upon his inspection of (1) the subject toaster oven; (2) a microwave

oven; (3) the receptacle that supplied power to the toaster oven and the microwave

oven; (4) the wiring that supplied power to the receptacle; and (5) the remains of a

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-00
Telephone: 203 573-1200

blender. (*Id.* at pp. 7–9.) Paul cites "the fire pattern, fire vector analysis, fire

expansion, lines of demarcation, etc."[1] as further support for his opinions. (*Id.* at p. 9.)

Based on his inspection of the fire scene and the subject toaster oven, Paul will

opine that

> [i]t is most probable that a failure of the electronic control
> allowed the unit to operate and overheat causing the wooden
> cabinets to overheat and ignite. The metal grease rack has
> indications of overheating that is consistent with damage caused
> by the elements in their high (broiler) heating position. My
> inspection found that the oven/broiler control knob was in the
> off position, thus the electronic control board is probably the
> reason for the failure. (*Id.* at pp. 9–10.)

Despite stating in his written report the foregoing opinion that the toaster oven

ignited the *wooden cabinets* above it, Paul changed his opinion during his deposition

and testified that the toaster oven ignited the *wall* behind it. (Paul Depo. at p. 63 ln. 13

– p. 65 ln. 7).

Paul will further opine that

> there is [sic] inadequate warnings in the instructions as far as
> placement of this unit in respect to wall mounted cabinets.
> There is a safeguard indicating that this appliance should be
> moved four to six inches away from the wall or any other object
> on the countertop. There is NO warning as to clearances from
> combustibles above this appliance. It is foreseeable, that
> without proper warning(s), these units will be placed on a
> countertop in close proximity to the combustible cabinets, as in
> this case. Placing this unit in a similar location would allow
> clearance of less than ten inches from the top of the appliance to

---

[1]  Paul testified in his deposition that his use of the term "etc." does not imply any
other bases for his opinion than those he listed specifically in his report. (Paul
Depo. at p. 94 lns. 4–14.)

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1130
Telephone: 203 573-1200

the combustible cabinets. When the appliance is used in the 'broil' mode the element will continue to supply ultimate heat to the housing of the unit. There should be a warning on clearances to all combustible materials. (Paul Report at p. 10.)

Based on these opinions, Paul concludes that

this fire most probably started as a result of a malfunction of the electronic control board that allowed the appliance to overheat combustibles that were too close to the appliance. The lack of proper clearance warnings allowed the installation of this appliance between the countertop and the combustible cabinets. (*Id.* at pp. 10–11.)

## 2.    Paul has no training as an electrical engineer.

Paul is not an electrical engineer. He received a 2-year associate degree in production engineering technology from Wentworth Institute in Boston, Massachusetts in 1972. (Paul Depo. at p. 14 ln. 16 – p. 15 ln. 13.) While at Wentworth, his training focused on industrial engineering. His only coursework in the field of electricity was a one-semester course in basic electricity and a one-semester course in electronics. (*Id.* at p. 17 lns. 2–4, 7–11.) He does not recall whether he took courses involving the effect of heat on materials. (*Id.* at p. 19 lns. 9–14.) Since receiving his associate degree from Wentworth Institute, Paul has had no formal education in engineering—or even any seminar training in engineering. (*Id.* at p. 19 lns. 15–23.) Although Paul is a registered professional engineer with the Commonwealth of Massachusetts in the field of industrial engineering, he is not registered in the field of electrical engineering. Paul is a Registered Professional Engineer with the Commonwealth of Massachusetts in the field of industrial

CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

21176063

engineering. (*Id.* at p. 17 ln. 14 – p. 18 ln. 6.) In fact, after arriving at his opinion in this case, Paul asked an electrical engineer, Richard Fain, to look at the subject toaster oven. (*Id.* at p. 48 ln. 23 – p. 50 ln. 7.) Although Fain allegedly told Paul that "a couple of the electronic things inside [the toaster oven] appeared to have been subjected to a lot of heat," Paul does not even know the names of those "electronic things." (*Id.* at p. 53 lns. 13–18.) Paul also was unable to draw a circuit diagram for the subject toaster oven. (*Id.* at p. 105 lns. 9–11.)

### 3.   Paul has no experience with toaster ovens or toaster oven fires.

Paul estimates that between one quarter and one half of his professional work involves fires. (*Id.* at p. 27 ln. 17 – p. 28 ln. 16.) But he received no training in fire investigation while obtaining his associate degree at Wentworth Institute. (*Id.* at p. 137 lns. 3–5.) Paul has no prior experience investigating toaster oven fires and is unfamiliar with the Underwriters Laboratory standards governing toaster ovens. (*Id.* at p. 89 lns. 3–5, p. 170 lns. 19–21.) In fact, Paul has no background in small appliances at all. (*Id.* at p. 51 lns. 7–8.) Since 1995, Paul has given cause and origin testimony in only two fire cases. (*Id.* at p. 45 lns. 16–20.) In one of these cases, he opined that a pump motor on a parts cleaner in an auto shop started a fire. (*Id.* at p. 41 ln. 10 – p. 42 ln. 19.) In the other, Paul does not remember what he contended started the fire. (*Id.* at p. 42 ln. 20 – p. 44 ln. 6, p. 45 lns. 16–20.) In 2003, Paul testified in a mediation involving a lightning strike but did not give cause and origin testimony.

(*Id.* at p. 37 ln. 10 – p. 38 ln. 7, p. 45 – ln. 22 – p. 46 ln. 8.)  All other cases in which

Paul has testified as an expert since 1995 involved collapses of physical structures.

(*Id.* at p. 32 ln. 18 – p. 37 ln. 9, p. 38 ln. 8 – p. 41 ln. 9, p. 44 ln. 7 – p. 45 ln. 1.)

> **4.      Paul has insufficient facts to support his theory that a
> malfunction of the electronic control board caused the
> subject toaster oven to overheat and ignite nearby
> combustibles.**

Although Paul opines that the cause of the fire was a failure of the toaster

oven's electronic control board, he admits he has done no testing of the subject toaster

oven's printed circuit board.  (*Id.* at p. 84 lns. 7–11.)  In fact, Paul has not conducted

tests of *any* kind—on the subject toaster oven, on an exemplar toaster oven, or on any

items or materials from the fire scene—to support his opinions and conclusions.

(*Id.* at p. 72 ln. 24 – p. 73 ln. 3.)

For instance, although Paul contends combustibles behind or above the toaster

oven were the first fuel for the fire, he does not know what types of combustibles were

there and consequently does not know their ignition temperatures.  (*Id.* at p. 63 ln. 17

– p. 64 ln. 8, p. 76 lns. 14–18.)  Although Paul contends that radiant heat coming from

the back or top of the subject toaster oven ignited the fire, he does not know the

exterior temperature the subject toaster oven could have reached when operating

continuously.  (*Id.* at p. 67 lns. 5–15.)  In fact, Paul has no knowledge at all about the

temperatures the subject toaster oven could reach.  (*Id.* at p. 71 ln. 20 – p. 72 ln. 3.)

Paul admits that his theory is necessarily incorrect if it is shown that the subject toaster

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721 1160
Telephone: 203 573-1200

oven cannot transmit enough heat to ignite the wall behind it. (*Id.* at p. 107 lns. 21–24.)

Paul bases his opinion, in part, on a report from the U.S. Consumer Product Safety Commission that identifies certain toaster ovens which allegedly can turn on spontaneously without any action by a consumer. (*Id.* at p. 84 ln. 22 – p. 86 ln. 12, p. 93 lns. 6–14.) Paul, however, does not know what caused any of the toaster ovens listed in the report to turn themselves on. (*Id.* at p. 92 lns. 5–7.) He also does not know if any of the toaster ovens listed in the report were Toastmaster toaster ovens, let alone the same model as the product at issue. (*Id.* at p. 91 lns. 18–24.) Paul also bases his opinion, in part, on conversations he had with Dan Cronin, a fire investigator, and Fain, the electrical engineer he consulted. (*Id.* at p. 87 ln. 17 – p. 88 ln. 11, p. 90 ln. 22 – p. 91 ln. 3.) But neither of these men told Paul how many toaster ovens they knew of that had turned themselves on, or whether any of those ovens were Toastmaster products. (*Id.* at p. 89 ln. 18 – p. 90 ln. 13.) Consequently, Paul does not know if there is a failure mode of the subject toaster oven's printed circuit board that could cause it to turn on while its switches are off. (*Id.* at p. 84 lns. 17–21.)

Finally, Paul does not know whether, at the time of the fire, the subject toaster oven was in the same condition as when it came from the factory. (*Id.* at p. 105 lns. 5–8.) He drew no conclusions as to whether anything was resting on the subject toaster oven at the time of the fire. (*Id.* at p. 118 lns. 10–14.)

5.    **Paul lacks any external indicia of reliability for his theory of ignition.**

Paul has no outside support for his ignition scenario. He is aware of no support in any professional literature concerning fire investigation to support the theory that the subject toaster oven could ignite the wall behind it or the cabinets above it. (*Id.* at p. 178 lns. 15–21.) He knows of no way to develop a rate of error for his testing methodology, nor does he follow any written standards in his investigations. (*Id.* at p. 178 ln. 22 – p. 179 ln 7.) Nor does Paul know if his theory concerning the subject toaster oven's ability to ignite the wall behind it is generally accepted among fire investigators. (*Id.* at p. 179 lns. 13–24.)

## III.    ARGUMENT AND AUTHORITIES

### A.    Plaintiffs' Expert's Testimony Must Meet The Standards For Sufficiency Under Federal Rule Of Evidence 702.

Expert testimony is admissible under F.R.E. 702 if the following conditions are satisfied: (1) the expert is qualified; (2) the testimony will assist the trier of fact; and (3) the methodology underlying the testimony is valid—*i.e.*, the testimony is based upon sufficient facts and is the product of reliable principles and methods, and these principles and methods have been reliably applied to the facts of the case.[2]

F.R.E. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993); *McCullock v.*

---

[2]    Although F.R.E. 702 governs the ultimate admissibility of this opinion evidence at trial, the Court's initial inquiry should be made pursuant to F.R.E. 104(a), which governs "preliminary questions concerning the qualifications of a person to be a witness[.]" *See* F.R.E. 104(a).

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1180
Telephone: 203 573-1200

*H.B. Fuller Co.*, 61 F.3d 1038, 1042 (2d Cir. 1995); *In re Joint E. & S. Dist. Asbestos Litig.*, 52 F.3d 1124 (2d Cir. 1995).

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court emphasized that the trial judge must act as a gatekeeper to ensure that the standard of evidentiary reliability is satisfied. 509 U.S. at 590, 597. There, the Court analyzed Rule 702, noting that "[t]he adjective 'scientific' implies a grounding in the methods and procedures of science. Similarly, the word 'knowledge' *connotes more than subjective belief or unsupported speculation.*" *Id.* at 590 (emphasis added). Further, in *Kumho Tire Co. v. Carmichael*, the Supreme Court held that *Daubert* applies not only to testimony based on "scientific knowledge" but also to testimony based on "technical" and "other specialized" knowledge. 526 U.S. 137, 141 (1999). Thus, this Court must assure that scientific evidence upon which an expert's opinion is founded is both "relevant and reliable"—*i.e.*, that the expert's conclusion is based on methods and principles of science. *Id.*; *see also United States v. Kwong*, 69 F.3d 663, 668 (2d Cir. 1995).

**B.      Plaintiffs Have The Burden Of Proving The Admissibility Of Their Expert's Proposed Testimony.**

The "task of the trial judge" under *Daubert* is to ensure that expert testimony is both reliable and relevant as a condition for its admission. Indeed, the Supreme Court has observed that, since *Daubert*, "parties relying on expert evidence have had notice of the *exacting standards of reliability* such evidence must meet." *Weisgram v. Marley*

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1190
Telephone: 203 573-1200

*Co.*, 528 U.S. 440, 455 (2000) (emphasis added). Even though Toastmaster has moved to exclude Plaintiffs' expert's testimony for failure to meet the exacting reliability and relevance standards, Plaintiffs—not Toastmaster—have the burden under Rule 104(a) of the Federal Rules of Evidence of proving the admissibility of their expert's testimony by a preponderance of proof. *Daubert*, 509 U.S. at 592 n.10. *See also Nook v. Long Island R.R.*, 190 F. Supp.2d 639, 666 (S.D.N.Y. 2002) ("The proponent of the evidence must demonstrate admissibility to the satisfaction of the Court under Rule 104(a) by establishing scientific or technical reliability by a preponderance of the proof."). As discussed below, Plaintiffs have failed to meet this burden.

Moreover, Plaintiffs are not entitled to have any disputed issues of fact resolved in their favor. "On a motion for summary judgment, disputed issues of fact are resolved against the moving party. . . . But the question of admissibility of expert testimony is not such an issue of fact. . . ." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). Plaintiffs are required to prove the admissibility of their experts' causation opinions by establishing that they satisfy the exacting *Daubert* standards.

     **C.**    **Plaintiffs' Expert's Testimony Does Not Satisfy The Exacting Standards Of Reliability And Relevance Established By *Daubert* And, Therefore, Should Be Excluded Under F.R.E. 702.**

          **1.**    **Paul is not qualified to testify about electrical engineering or small household appliances.**

The Court must first address whether Paul is qualified to testify about an alleged malfunction in the subject toaster oven. F.R.E. 104(a). An expert witness

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06724-1110
Telephone: 203 573-1200

must first establish that his or her qualifications and testimony "fit" the subject matter

of the case. Courts determine fit by assessing whether the testimony "is sufficiently

tied to facts of the case that it will aid the jury in resolving a factual dispute."

*Daubert*, 509 U.S. at 591. Fit is, in essence, a heightened relevance review that

requires a showing of more than bare relevance. *In re Paoli R.R. Yard PCB Litig.*, 35

F.3d 717, 745 (3d Cir. 1994), *cert. denied, Gen. Elec. Co. v. Ingram*, 513 U.S. 1190

(1995).

     The mere fact that an expert is qualified in one area does not necessarily

qualify the expert to testify in related areas. Indeed, "there are many different kinds of

experts, and many different kinds of expertise." Courts will strike an expert whose

area of expertise does not fit the case. *Kumho*, 526 U.S. at 150; *see also Shreve v.

Sears, Roebuck & Co.*, 166 F. Supp.2d 378, 394 (D.Md. 2001) (excluding an

"eminently qualified mechanical engineer and professor of mechanical engineering"

where he had no particular expertise in snow throwers); *Kerrigan v. Maxon Indus.*,

223 F. Supp.2d 626, 637 (E.D.Pa. 2002) (noting that, even though an expert was

qualified to testify in general terms about the function of a hydraulic system in a

cement mixer, he was not qualified to testify about a proposed safety feature because

he lacked experience in equipment design); *Weisgram v. Marley Co.*, 169 F.3d 514,

519 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000) (although experts qualified as fire

cause and origin experts, they were not qualified to opine on whether the product

malfunctioned to cause the fire); *Trumps v. Toastmaster, Inc. 969* F. Supp. 247, 252

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110 –
Telephone: 203 573-1200

(S.D.N.Y. 1997) (board certified safety professional and mechanical engineer not

qualified to testify regarding the malfunction of electric grill).

In *Trumps*, the plaintiff proposed to have his expert mechanical engineer give

opinion testimony about the electrical design of an electric grill, including whether the

electrical contacts between the grill and its heat-control unit were insufficiently

guarded from grease. 969 F. Supp. at 249–51. The plaintiff's mechanical engineer

believed that this condition rendered the grill defectively designed and intended to

testify accordingly at trial. *Id.* at 250–51. Because the plaintiff's proposed expert was

a mechanical engineer, the district court found him to be unqualified to render opinion

testimony about electrical engineering issues and for that reason excluded his

testimony about the electrical design of the product. *Id.* at 252–53 (citing *Stagl v.

Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997) ("[D]istrict court may properly

conclude that witnesses are insufficiently qualified despite the relevance of their

testimony because their expertise is too general or too deficient.")).

Here, Paul proposes to give opinion testimony at trial that an unspecified

failure of the electronic control board caused the subject toaster oven to overheat and

ignite the nearby wall and/or cabinets. Paul is not qualified to give opinion testimony

about such an electrical malfunction because he has no education as an electrical

engineer and no experience with small appliances, including toaster ovens. Paul's

education and experience are both too general and too deficient. Paul is an industrial,

not an electrical, engineer—and therefore just as deficient as the proposed expert in

CARMODY & TORRANCE LLP
Attorneys at Law

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

21176063

*Trumps.* (Paul Depo. at p. 17 ln. 14 – p. 18 ln. 6.) He has taken only one semester-long course each in the areas of electricity and electronics. (*Id.* at p. 17 lns. 2–4, 7–11.) He has had no formal engineering education since receiving his associate degree in 1972—in fact, he has not even had seminar training in engineering since that time. (*Id.* at p. 19 lns. 15–23.)

Paul has no background in small appliances whatsoever, and no prior experience with investigating toaster oven fires. (*Id.* at p. 51 lns. 7–8, p. 89 lns. 3–5.) He is unfamiliar with Underwriters Laboratory standards governing toaster ovens. (*Id.* at p. 170 lns. 19–21.) He could not draw a circuit diagram for the subject toaster oven. (*Id.* at p. 105 lns. 9–11.) He does not know the exterior temperature the subject toaster oven or similar toaster ovens can reach when operating continuously—in fact, he has no knowledge at all about the operating temperatures of the subject toaster oven or similar toaster ovens. (*Id.* at p. 67 lns. 5–15, p. 71 ln. 20 – p. 72 ln. 3.)

Paul even recognized his own lack of qualifications by showing the subject toaster oven to an electrical engineer a few weeks before his deposition, allegedly for the purpose of checking his work. (*Id.* at p. 48 ln. 23 – p. 50 ln. 7.) Tellingly, Paul could not even remember the names of the electrical components that the electrical engineer allegedly told him had been subjected to a great deal of heat. (*Id.* at p. 53 lns. 13–18.) Paul, in fact, will routinely have electrical experts review appliances when he is attempting to determine what caused alleged failures because it is "above . . . [his] expertise." (*Id.* at p. 135 lns. 15-21.)

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

Paul simply does not possess the requisite skill, training, or education in the fields of electrical engineering and small appliances to allow him to be qualified to render the expert opinions he proposes to offer at trial. For this reason, Paul fails to pass even the basic threshold requirement of either minimal education or experiential competency in the field in which he proposes to testify. Because Paul is unqualified, the Court should exclude his opinion testimony regarding an alleged malfunction of the subject toaster oven's electronic control board.

### 2. Paul should not be allowed to testify because his opinions are not sufficiently reliable under the *Daubert* factors.

The next step in the *Daubert* analysis is determining whether Paul's proposed opinions are reliable.[3] F.R.E. 104(a). Paul proposes to support his opinion testimony—that an unspecified electrical malfunction caused the subject toaster oven to turn on, overheat and ignite the wall and/or cabinets—without any testing, publication, standards, or known potential error rate. Without this support, Paul's opinion testimony is unreliable.

In *Daubert*, the Supreme Court held that a trial court must determine whether the expert's reasoning or methodology is reliable before the expert's testimony is admissible at trial. 509 U.S. at 592–93. The *Daubert* decision identified the following five non-exclusive factors to prevent the introduction of ill-founded expert testimony:

---

[3] The Court need not proceed to this inquiry because Paul's qualifications are insufficient; he can and should be excluded for that reason alone. Nevertheless, Paul's opinions are also unreliable because his methodology, particularly the absence of any testing, is also insufficient.

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

(1) whether a theory or technique has been or can be tested; (2) whether it has been subjected to peer review and publication; (3) its known or potential rate of error; (4) whether there are standards controlling its operation; and (5) its general acceptance in a relevant scientific community. 509 U.S. at 593–94.

The Supreme Court noted that "a key question" is whether the expert's theory "can be (and has been) tested." *Id.* at 593. "[C]ourts interpreting *Daubert* have considered testability of the expert's theory to be the most important . . . factor[], and this is especially true in cases involving allegations of defect in product design, as opposed to cases involving medical and pure scientific theories, which will be subjected to rigorous peer review." *Berry v. Crown Equipment Corp.*, 108 F. Supp.2d 743, 754 (E.D.Mich. 2000); *see also Chapman v. Maytag Corp.*, 297 F.3d 682, 688 (7th Cir. 2002) (stating that "testing" is "*Daubert*'s most significant guidepost"); *Schmaltz v. Norfolk & W. Ry. Co.*, 878 F. Supp. 1119, 1121 (N.D.Ill. 1995) (stating that the most important *Daubert* factor is "whether the proffered scientific theory can be and has been tested by the scientific method"); *Stanczyk v. Black & Decker, Inc.*, 836 F. Supp. 565, 567 (N.D.Ill. 1993) ("*Daubert* teaches that I must consider certain factors. In my view . . . the most important factor is whether the technique (or theory) being advanced by the expert can be or has been tested").

Since *Daubert*, trial courts have routinely excluded proposed expert testimony because it was not supported by scientific testing. In *Trumps*, the district court was confronted with an expert who opined that plaintiff's electrical shock was the result of

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 16 -

a defectively designed griddle. 969 F. Supp. at 247. The expert's theory was that grease from the griddle's surface, as a result of a defectively designed drain and/or insufficient product instruction, found its way to the electrical connections of the heat-control unit on the griddle, thereby generating a hazardous flow of electricity back to the griddle surface and then to plaintiff. *Id.* at 253. To test this theory, the expert had only visually inspected an exemplar griddle, read the instruction manual, and plugged the griddle in to measure its electrical power. *Id.* The expert made no attempt to replicate the alleged event or otherwise test whether his causation theory was credible. *Id.* The court excluded the expert's proffered opinion testimony because it was unreliable. *Id.* at 253. The court stated that the expert had done "nothing to address the 'key question' articulated in *Daubert* of whether his theory of causation 'can be (and has been) tested.'" *Id.*

In *Berry v. Crown Equipment Corp.*, the plaintiff's foot was crushed because she was driving a stand-up forklift with her foot hanging outside the operator's compartment. Plaintiff's expert claimed that the forklift was defectively designed because the manufacturer failed to install a door enclosing the operator's compartment. The expert did not test his hypothesis to determine whether a door would aggravate other safety risks. Instead, plaintiff's expert attempted to prove his theory based solely on the fact the plaintiff's accident occurred, opining that a door was needed because the plaintiff's "foot was outside and it was crushed." 108 F. Supp.2d at 755. The court found that the failure to test the forklift door theory made

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 16 -

the expert's opinion inadmissible speculation. *Id.*; *see also Chapman*, 297 F.3d at 688 (reversing trial court's admission of expert testimony where expert did not conduct any tests or experiments to arrive at his conclusions, stating that "the absence of any testing indicates that [the expert's] proffered opinions cannot fairly be characterized as scientific knowledge").

In *Stanczyk v. Black & Decker*, the plaintiff was injured while using a miter saw. His expert was an experienced designer of saws who had previously worked for the manufacturer of the saw at issue. He claimed that the saw's guard did not provide adequate protection because too much of the blade was exposed. The court concluded that the expert "offered no testable design to support his concept" and noted that "the history of engineering and science is filled with finely conceived ideas that are unworkable in practice." 836 F. Supp. at 567. The plaintiff argued that he would have to pay his expert $20,000 to $40,000 to come up with a testable design and the net effect of requiring such a test was "beyond his financial ability to pursue." *Id.* The court was not persuaded and stated that "it is the very nature of Rule 702 and *Daubert* that requires these expenditures. Proof of any kind is often expensive to gather. Scientific reliability and validity in our times is seldom cheap . . . ." *Id.* at 568.

The opinion testimony proffered by Paul is unreliable because it wholly fails this key *Daubert* element of testing. In fact, Paul performed no testing whatsoever— on the subject toaster oven, on an exemplar toaster oven, or on any items or materials from the fire scene—to support his opinions and conclusions. (Paul Depo. at p. 72 ln.

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110 –
Telephone: 203 573-1200

24 – p. 73 ln. 3.)  The absence of any pertinent testing leaves Paul's opinion testimony without any reliable methodology or reasoning.  As in *Trumps, Berry, Stanczyk,* and *Chapman,* Paul's opinion testimony should be excluded because it is unreliable. *Trumps,* 969 F. Supp. at 253.  Like the expert opinions in the above cases, Paul's imaginative explanation of an ignition scenario for the Luce fire is unreliable because his theory is unsupported by any acceptable reasoning or methodology, particularly in the absence of any testing that would resemble the factual circumstances in the Luce home on the day of the fire.

Also, significant steps in the chain of events that Paul believes ignited this fire are unsupported by *any* facts.  Paul alleges that the electronic control board malfunctioned, yet he admits he does not know if there is a failure mode of the printed circuit board that can turn the subject toaster oven on while its switches are off.  (Paul Depo. at p. 84 lns. 7–11.)  Instead, Paul relies on reports from the Consumer Product Safety Commission ("CPSC") (*Id.* at p. 84 ln. 22 – p. 86 ln. 12, p. 93 lns. 6–14), which are wholly inadmissible.  *See Knotts v. Black & Decker, Inc.,* 204 F. Supp.2d 1029, 1040 (N.D. Ohio 2002) (a fire cause and origin investigator's reliance on reports from the CPSC was not admissible because the "trustworthiness" of these type of reports cannot not be established).

Pauls also does not have any knowledge or data regarding potential operating temperatures that the subject toaster oven could reach.  (Paul Depo. at p. 71 ln. 20 – p. 72 ln. 3.)  Paul admits that his ignition scenario for this fire, and thus his related

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110 -
Telephone: 203 573-1200

theory regarding the defect in the product, is fatally flawed if it is shown that the subject toaster oven cannot transmit enough heat to ignite the wall behind it. (*Id.* at p. 107 lns. 21–24.) Toastmaster's expert, Bruce V. Ettling, conducted laboratory testing that proves the subject toaster oven could not have transmitted sufficient heat to ignite the wall behind it or the cabinets above it. (Ettling Report at p. 2). Dr. Ettling conducted testing that simulated the specific conditions and placement of the toaster oven in the Luce's kitchen and allowed an exemplar toaster oven to run continuously for over three hours. Temperature measurements were taken by thermocouples attached to the toaster oven itself, the wall behind it and the cabinets above it during the entire test. Dr. Ettling concluded that:

> Clearly, the TOB [toaster oven broiler], even if it could malfunction, could not have ignited either the wall or the upper cabinet. The damage to the Luce TOB was far in excess of what the heat elements could have done by being on continuously. The observed damage must have been a result of burning of the materials that dropped down from the upper cabinet.

(Ettling Report at 2.)

Paul also destroyed relevant and potentially exculpatory evidence before giving Toastmaster an opportunity to inspect it. Paul testified that a microwave was plugged into the same outlet as the subject toaster oven at the time of the fire. (Paul Depo. at p. 119 lns. 2–4.) He did not preserve the microwave after examining it. (*Id.* at p. 127 lns. 12–18.) Even though Paul eliminated the microwave as a potential cause (*Id.* at p. 123 lns. 1–5), he agrees that microwaves can be competent ignition

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 19 -

sources. (*Id.* at p. 155 lns. 20–22.) This is troubling because Paul has no electrical

expertise, yet he felt compelled to eliminate the microwave as a possible cause and

then denied Toastmaster the opportunity to challenge his finding. Although not the

subject of this motion, this destruction prejudiced Toastmaster because its experts

cannot personally examine the evidence that Paul examined. What it does

demonstrate, however, is that Paul's opinions are not sufficiently reliable.

Thus, Paul proposes to give opinion testimony without any supporting fact

bases, which is wholly unacceptable expert opinion testimony under any interpretation

of *Daubert*. Where an expert's opinion is "connected to the existing data only by the

ipse dixit of the expert," the expert's opinion is inadmissible. *Perkins v. Origin

Medsystems, Inc.*, 299 F. Supp.2d 45, 53 (D. Conn. 2004) (quoting *General Electric

Co. v. Joiner*, 522 U.S. 136, 146, (1997)). The connection between Paul's data (or

lack thereof) and his opinions is, at best, pure speculation. Paul presupposes that the

design or manufacture of the toaster oven was defective. He assumes a defect by

virtue of the fact that a fire occurred. Pauls then "reasons" backwards and concludes

that the assumed "defect" caused the fire. Paul testified that he did not actually have

any evidence that the toaster oven malfunctioned, that he did not actually identify

anything in the toaster oven that failed, that he did not actually identify any defect in

the toaster oven, and that he did not actually determine any mechanism of failure. For

this reason, Paul's proposed opinion testimony about the ignition scenario involving

the subject toaster oven should be excluded as evidence at trial.

Finally, Paul's opinion testimony does not satisfy at least three other factors articulated by the Supreme Court in *Daubert*. The third *Daubert* factor is whether there is a known or potential error rate associated with the expert's methodology. In *Peitzmeier v. Hennessy Industries, Inc.*, 97 F.3d 293 (8th Cir. 1996), *cert. denied*, 520 U.S. 1196 (1997), a mechanic was injured while using a tire changing machine when a tire exploded. Plaintiff's expert claimed that certain safety devices were missing from the machine. The Eighth Circuit affirmed the trial court's exclusion of his testimony because there was neither "a known rate of error for his results," nor evidence of a "potential" rate of error for his opinions. 97 F.3d at 298; *see also Perkins*, 299 F. Supp. 2d at 53 (citing *Daubert* factors); *Meyers v. Arcudi*, 947 F. Supp. 581, 587 (D. Conn. 1996) (applying *Daubert* factors). Paul knows of no way to quantify a rate of error for his testing methodology. (Paul Depo at p. 178 ln. 22 – p. 179 ln 7.)

The fourth *Daubert* factor, maintenance of appropriate standards and controls over the methodology's operation, is relevant here. *See Clarke v. LR Sys.*, 219 F. Supp.2d 323, 332 (E.D.N.Y. 2002); *Coffey v. Dowley Mfg., Inc.*, 187 F.Supp.2d 958, 978 (M.D.Tenn. 2002) (excluding testimony of expert where he recognized the authoritative nature of the American Society for Testing and Materials but failed to comply with the ASTM standards, which belied his "claim that his theories are generally accepted"); *see also Perkins*, 299 F. Supp. 2d at 53; *Meyers*, 947 F. Supp. at 587. Paul does not follow any written standards controlling his methodology in investigations. (Paul Depo. at p. 179 lns. 8–12.)

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 21b -

Finally, Paul does not know if his theory concerning the subject toaster oven's ability to ignite the wall behind it has achieved general acceptance among fire investigators. (*Id.* at p. 179 lns. 13–24.) In products litigation, experts must demonstrate that their theories are based on generally accepted scientific principles or face exclusion of their testimony. *See Pride v. BIC Corp.*, 218 F.3d 566, 577–78 (6th Cir. 2000) (experts' testimony that focused on cause and origin of a fire excluded because of failure "to validate their hypothesis by reference to generally accepted scientific principles"); *United States v. Dorsey*, 45 F.3d 809, 814-15 (4th Cir.), *cert. denied*, 515 U.S. 1168 (1995) (affirming exclusion of expert testimony as invalid because the methodology was not generally accepted); *Chapman,* 297 F.3d at 688 (excluding expert's opinion concerning defect in electric range where it was "unsupported by any article, text, study, scientific literature or scientific data produced by others in his field"); *see also Perkins*, 299 F. Supp.2d at 53; *Meyers*, 947 F. Supp. at 587–88. For these reasons as well, Paul's opinion testimony is unreliable and should be excluded as evidence at trial.

3.    **Paul should not be allowed to testify because his opinions are not sufficiently reliable under the other non-*Daubert* Factors.**

Courts apply greater scrutiny to an expert opinion that was developed solely for litigation purposes. *See Daubert v. Merrill Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). In *Samuel v. Ford Motor Co.*, 96 F. Supp.2d 491 (D.Md. 2000), the court excluded an expert's design alternative because it was "born in litigation" and,

CARMODY & TORRANCE LLP
Attorneys at Law
21176063
50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
– 22 –

therefore, was considered unreliable. *Id.* at 503. Courts have also examined whether the expert "is being as careful as he would be in his regular professional work outside his paid litigation consulting." *Sheehan v. Daily Racing Form, Inc.*, 104 F.3d 940, 942 (7th Cir.), *cert. denied*, 521 U.S. 1104 (1997). What this entails is considering whether the expert has used "the same level of intellectual rigor" in his or her non-litigation work. *Kumho*, 526 U.S. at 152. Here, Plaintiffs have not presented any evidence that Paul has researched or analyzed appliance failures in a non-litigation context. Thus, an additional non-*Daubert* factor supports the conclusion that Paul's testimony is unreliable.

Additionally, expert opinion based on faulty assumptions is not reliable. Assumptions are faulty when they are unsupported in the record. Assumptions may be faulty because there is no support in a record for them. *See, e.g., Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000) (fire investigator did not have "free rein to speculate . . . as to cause of the fire by relying on inferences [concerning temperature transmitted by space heater] that had absolutely no record support"). Here, similar to the expert in *Weisgram*, Paul makes critical assumptions without any record support that the subject toaster oven could transmit sufficient heat to ignite nearby combustibles. Specifically, Paul admits that he does not know the exterior temperature the subject toaster oven could have reached when operating continuously. (Paul Depo. at p. 67 lns. 12–15.) In fact, Paul has no knowledge at all about the temperatures at which the subject toaster oven could heat. (*Id.* at p. 71 ln. 20

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 23 -

– p. 72 ln. 3.)  Moreover, he does know what types of combustibles were there and

consequently does not know their ignition temperatures  (*Id.* at p. 63 ln. 17 – p. 64 ln.

8., p. 76 lns. 14–18.)

### 4.    Paul's Opinions In His Report Are Different Than His Deposition, Which Makes His Testimony Unreliable.

Despite claiming in his written report that  the toaster oven ignited the wooden

cabinets above it (Paul Report at pp. 9–10), Paul changed his opinion during his

deposition and testified that the toaster oven ignited the wall behind it.  (Paul Depo. at

p. 63 ln. 13 – p. 65 ln. 7).  Although Paul argued in his deposition that his testimony

(*Id.* at p. 62, lns. 5-15) had not changed, the Court can review the report and testimony

and easily determine a change occurred.  Paul, nevertheless, when pressured, finally

admitted that whether he had changed from the opinions in his report was "a matter of

interpretation."  (*Id.* at p. 63, lns. 8-12.)    A change in an expert's opinion indicates

the testimony is unreliable.  *Daubert v.  Merrill Dow Pharms., Inc.*, 43 F.3d 1311 (9th

Cir. 1995) ("Any such tailoring of the experts' conclusions would, at this stage of

proceedings, fatally undermine any attempt to show that these findings were 'derived

by the scientific method.'"); *Comer v.  American Elec. Power*, 63 F. Supp.2d 927, 935

(N.D.Ind. 1999) ("an expert must be able to point to some reliable scientific or factual

basis to support any significant change in his specialized testimony"); *In re TMI Litig.*

*Cases Consol. II*, 922 F. Supp. 997, 1015 (M.D.Pa. 1996) ("A purportedly scientific

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 24 -

opinion that constantly changes merely to avoid critique can hardly be said he based upon 'good grounds.'").

### D.     Plaintiffs Cannot Establish A Submissible Case Without The Testimony Of An Expert

Summary judgment is appropriate if the non-moving party cannot prove an essential element of its case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In this product liability case, expert testimony is required to prove the defective nature of the subject toaster oven, as well as causation. *Sharp v. Wyatt, Inc.*, 627 A.2d 1347, 1352 (Conn. App. 1993); *see also LePage v. Horne*, 809 A.2d 505, 511 (Conn. 2002). This element is essential to Plaintiffs' product liability case because topics such as appliance design, electricity, ignition scenarios, and combustion are not within the common knowledge and experience of the typical juror. In the absence of such expert testimony, summary judgment is appropriate. *Daubert*, 509 U.S. at 596 (summary judgment is appropriate safeguard of scientific evidence); *Trumps v. Toastmaster Inc.*, 969 F. Supp. 247, 254 (S.D.N.Y. 1997) (summary judgment granted for defendant toaster manufacturer after opinion testimony of plaintiff's mechanical engineer was excluded because expert was not qualified and methodology was unreliable); *Boyles v. American Cyanamid Co.*, 796 F. Supp. 704, 709 (E.D.N.Y. 1992) (partial summary judgment granted for defendant after opinion testimony of plaintiff's physician experts was excluded because testimony was unreliable).

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-25 -
Telephone: 203 573-1200

Plaintiffs cannot establish a submissible case without the testimony of an expert, and Plaintiffs' purported expert is unqualified and proposes to provide opinion testimony that is scientifically unreliable. Thus, Plaintiffs' expert should be excluded from testifying at trial, and Toastmaster is entitled to summary judgment as a matter of law.

## IV. CONCLUSION

*Daubert* and its progeny make clear that "[p]roposed [expert] testimony must be supported by appropriate validation." 509 U.S. at 591. The failure of Plaintiffs' expert to test his hypothesis or to validate his hypothesis by reference to generally accepted scientific principles as applied to the facts of this case renders his testimony on the cause and origin of the fire unreliable and therefore inadmissible under *Daubert* and Federal Rules of Evidence 702 and 104. Based on the foregoing authority and argument, Toastmaster respectfully requests that this Court exclude Plaintiffs' expert witness, Fred Paul III, from providing expert opinion testimony at trial. Further, Toastmaster respectfully requests that this Court enter summary judgment in favor of Toastmaster and against Plaintiffs, for Toastmaster's costs expended herein, and for any further relief that this Court deems necessary and appropriate.

CARMODY & TORRANCE LLP
Attorneys at Law
21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200
- 26 -

Respectfully submitted,
CARMODY & TORRANCE, LLP
Attorneys for Defendant Toastmaster Inc.

By: _____

Maureen Danehy Cox (ct05499)
50 Leavenworth Street
P.O. Box 1110
Waterbury, CT 06721-1110
Telephone: (203) 573-1200
Facsimile: (203) 575-2600

*Of Counsel*

SONNENSCHEIN NATH &
ROSENTHAL
Robert O. Lesley
Brian W. Fields
Lynnette L. Siegel
4520 Main Street, Suite 1100
Kansas City, Missouri 64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing document was served by first-class mail, postage prepaid, on the 3rd day of May, 2004, addressed to:

> Margaret Ralphs
> LAW OFFICES OF STUART G. BLACKBURN
> Two Concorde Way
> P.O. Box 608
> Windsor Locks, CT 06096
> Telephone: (860) 292-1116

and

> David W. Smith
> COZEN O'CONNOR
> 1900 Market Street
> Philadelphia, PA 19103
> Telephone: (215) 665-2103

ATTORNEYS FOR PLAINTIFF

_____
Attorney for Defendant

CARMODY & TORRANCE LLP
Attorneys at Law

21176063

50 Leavenworth Street
Post Office Box 1110
Waterbury, CT 06721-1110
Telephone: 203 573-1200

- 20 -