IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

United States District Court
District of Connecticut
FILED AT        NEW HAVEN
6/10 2004
Kevin F. Rowe, Clerk
By_____
Deputy Clerk

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY | : | |
| a/s/o JAMES F. LUCE, JR., and | : | |
| SIGURLIM LUCE | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | 303 CV 00604 (JBA) |
| TOASTMASTER, INC., | : | |
| | : | |
| Defendant. | : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO PRECLUDE AND FOR SUMMARY JUDGMENT**

David W. Smith, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA  19103
215-665-2000

Law Offices of Stuart G. Blackburn
Two Concorde Way
Windsor Locks, CT 06096
(860) 292-1116

Attorneys for Plaintiff

## I.   INTRODUCTION

This case arises out of a fire that occurred at the premises of plaintiff's subrogor, James and James and Sigurlim Luce, on or about April 16, 2001. As a result of the fire, plaintiff made payments to Mr. and Mrs. Luce in the amount of $131,000, and then brought this subrogation action against defendant Toastmaster, Inc., alleging that a toaster oven manufactured by the defendant was responsible for causing the fire. A copy of plaintiff's Complaint is attached to this opposition as Exhibit "A."[1]

Discovery is now complete. Defendant has now filed a motion to preclude pursuant to Federal Rules of Evidence 104(a) and 702, and for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing, in substance, that the proposed testimony of plaintiff's expert, Skip Paul, is inadmissible under the principles set forth in Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), and that if this testimony is precluded by the Court, the plaintiff cannot, as a matter of law, prevail at trial. See Toastmaster's Memorandum of Law at pages 10-24, 25.

For the reasons that follow, defendant's Motion should be denied. In the alternative, defendant's motion should await a full evidentiary Daubert hearing at the time of trial. Even if this Court were, at this stage in the litigation and without a Daubert hearing, to preclude Mr. Paul from offering certain opinions at trial as challenged in defendant's motion, summary judgment is not appropriate here where plaintiff can prove its case through circumstantial evidence.

## II.   STANDARDS TO BE APPLIED

The standards to be applied in ruling on a motion for summary judgment are well-settled. Rule 56(c) provides that a motion for summary judgment:

---

[1]    This matter was originally filed in the Superior Court of Connecticut in the Judicial District of Tolland at Rockville on or about February 28, 2003. The action was subsequently removed to this Court by the defendant pursuant to 28 U.S.C. §1332 and §1441.

> [s]hall be rendered forthwith if the pleadings, depositions, answers
> to interrogatories, and admissions on file, together with the
> affidavits, if any, show that there is no genuine issue as to any
> material fact and that the moving party is entitled to a judgment as
> a matter of law.

The purpose of summary judgment is to prevent the unnecessary trial which would result if there are no genuine issues as to material facts. If there is any evidence in the record from any source from which a reasonable inference as to the existence of a material fact can be made in the non-movant's favor, the moving party is not entitled to summary judgment. R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 56 (2nd Cir. 1997). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970).

Material factual disputes are "genuine" if a reasonable jury could return a verdict for the non-moving party based upon the record as a whole. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2511, 91 L. Ed. 29 202 (1986); Weber v. Prudential Ins. Co. of America, 120 F. Supp. 2d 220 (D. Ct. 2001). When determining whether disputed facts are genuine, the court must review the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Savage v. Scripto-Tokia Corp., 266 F. Supp. 2d 344 (D. Ct. 2003).

Assessment of credibility and choices between conflicting versions of events are matters for the jury that are not resolvable by way of summary judgment. Rule v. Brine, Inc., 85 F.3d 1002 (2nd Cir. 1996). When reasonable persons, applying the proper legal standards, could differ in their responses to the question raised on the basis of the evidence presented, the question is best left to the jury. Sologub v. City of New York, 202 F.3d 175, 178 (2d Cir. 2000). In this regard, granting summary judgment may not be based on a finding that the moving party's evidence is more "reliable" or "accurate" than the non-moving party's evidence. Leonard v. Dixie Well Service & Supply, Inc., 828 F.2d 291 (5th Cir. 1987).

The standards to be applied pursuant to <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.,</u> <u>supra</u>, and its progeny are discussed <u>infra</u>., at pages 6-11.

**III.    APPLICABLE LAW -- There Are Genuine Issues Of Fact For Trial**

**A.    Mr. Paul's opinions are sufficient to raise a jury question.**

Following the fire of April 16, 2001, plaintiff Allstate retained the firm George, Slack and Pritzger to conduct an investigation into the cause of this loss. Skip Paul, a Registered Professional Engineer and a Certified Fire and Explosion Investigator, was assigned to complete the cause and origin investigation. A copy of the Curriculum Vitae of Mr. Paul is attached to this opposition as Exhibit "B" and is incorporated herein by reference. Mr. Paul's Curriculum Vitae and documents in detail his qualifications to conduct an investigation into the cause of the April 16, 2001 fire and to offer opinions in this case.[2]

Mr. Paul initiated his investigation into the cause and origin of the April 16, 2001 fire at the Luce home on April 25, 2001. Based on his investigation, Mr. Paul prepared a written report which sets forth his conclusions in this case. <u>See</u> Exhibit "C", which is incorporated herein by reference. Upon receiving his assignment, Mr. Paul traveled to the Vernon Fire Marshal's office and met with Donald Maguda, the local fire marshal who first investigated this fire. <u>See</u> Exhibit "C," pg. 1. Mr. Maguda provided Mr. Paul with the physical evidence retained from the scene by the fire marshal, including the toaster oven which is the subject of this lawsuit, as well as the police report and police photographs of the fire scene. <u>Id.</u>

---

[2]    Toastmaster had not challenged Mr. Paul's qualifications to offer opinions with respect to the origin of the April 16, 2001 fire, which Mr. Paul placed directly at the toaster oven. Defendant's motion appears to only challenge Mr. Paul's opinion as to the cause of the fire, which Mr. Paul attributes to a malfunction in the toaster oven. Aside from Mr. Paul's testimony as to the fire causation, the circumstantial evidence in this case supports plaintiff's theory that the toaster oven malfunctioned thereby causing the fire.

Following this meeting with Mr. Maguda, Mr. Paul traveled to the fire scene wherein he interviewed Mrs. Luce and conducted his on scene inspection. See Exhibit "C", pgs. 2-4. Information provided by Mrs. Luce and relevant to Mr. Paul's findings are memorialized in his report at pages 2-4. Id.

Of note, Mr. Paul learned that the Luce's had not experienced any trouble with the toaster oven since it was given to them as a Christmas gift in 1998. Id. at p. 3. Mrs. Luce stated that the toaster oven had not been used for at least five days prior to the fire. Id. In addition, Mrs. Luce stated that the toaster was plugged into the wall outlet. Id.

Following his interview with Mrs. Luce, Mr. Paul began his physical inspection of the home. Based on fire damage as documented in the photographs attached to Mr. Paul's report, Mr. Paul concluded that the April 16, 2001 fire was contained to the 1st floor kitchen and attic area immediately above the kitchen. See Exhibit "C", pg. 5. While other portions of the house suffered smoke, heat and water damage, Mr. Paul observed that it was only the kitchen which exhibited evidence of fire damage. Id. Detailed observations concerning Mr. Paul's scene inspection are memorialized in Mr. Paul's written report at pg. 5, and in the photographs attached to his report.

Based on his interview of Mr. Maguda, Mrs. Luce, and his on-scene observations of the fire burn patterns, fire vector analysis, fire expansion and lines of demarcation, Mr. Paul determined that the fire originated at a point on the kitchen counter-top where Mrs. Luce kept her toaster oven. See Exhibit "C", pg. 10. Based on product literature that Mrs. Luce had retained and provided to Mr. Paul, the toaster was identified as having been manufactured by the defendant Toastmaster. See Exhibit "C", pgs. 6, 8-11. In addition to determining that the fire originated at the toaster, Mr. Paul ruled out other possible causes of the fire such as a nearby microwave, a nearby blender and the electric service to the toaster oven. Id., pgs. 6, 9. At his

4

deposition, Mr. Paul explained how other possible causes, such as careless smoking and the possibility of an incendiary fire, were not factors in this case. See Paul Dep. at pgs. 113, 130, attached to defendant's motion as Exhibit "B".

Aside from determining that the fire originated at the toaster oven, Mr. Paul also conducted a forensic examination of the remains of the toaster oven. Detailed observations concerning Mr. Paul's inspection of the toaster are documented in his report at pgs. 7-9. See Exhibit "C." Of note, Mr. Paul observed that the metal grease rack had indications of overheating that is consistent with damage caused by the elements in their high heating position. Based on Mr. Paul's investigation, which included interviews, a scene examination, a cause and origin determination, ruling out other possible causes, and an examination of the toaster oven, Mr. Paul concluded that a malfunction of the toaster oven occurred which allowed it to overheat and ignite combustibles in close proximity to the toaster. Id. pgs. 9-11.

**B.** **Evidence of a malfunction is competent proof of a product defect in Connecticut, sufficient to raise a jury issue in this case.**

In Connecticut, it is not necessary for a plaintiff in a product liability action such as this to establish a specific defect, so long as there is evidence of some unspecified dangerous condition. See Liberty Mutual Insurance Company v. Sears, Roebuck and Company, 35 Conn. Supp. 687, 406 A.2d 1254 (1979). Whether a product is unreasonably dangerous is a question of fact to be determined by the jury. The jury may rely on circumstantial evidence to establish the dangerous condition of the product. Id. For example, in the absence of other identifiable causes, circumstantial evidence of a malfunction is sufficient evidence of defect under the products liability law. Id.

In the Liberty Mutual-Sears case, a plaintiff was able to establish that a television set was defective based solely on circumstantial evidence. For example, the jury had before it testimony of a fire marshal who zeroed in on the television set as the cause of the fire, but who also

5

eliminated other causes of the fire. "[The jury] also had the testimony of [the insureds] that the set was used normally over a period of six months. This evidence, together with the evidence that the set had in fact malfunctioned and the jury's knowledge from common experience that television sets, in normal use, do not self-ignite, was sufficient to establish that the television set in question was defective." 35 Conn. Supp. at 691.

See also Living and Learning Center Inc. v. Grieses Custom Signs, Inc., 3 Conn.App. 661, 491 A.2d 433 (1985)(in the absence of other identifiable causes, evidence of malfunction is sufficient evidence of a defect); Potter v. Chicago Pneumatic Tool Co., 241 Conn. 199, 694 A.2d 1319 (1997)(a fact finder can find, where other identifiable causes are absent, that the mere evidence of a malfunction is sufficient evidence of a defect). Standard Structural Steel Co. v. Bethlehem Steel Corp., 597 F.Supp. 164, 183 (D.Conn. 1984)(recognizing that Connecticut law permits fact finder to draw inference of defect from circumstantial evidence).

The circumstantial evidence present in this case is just as strong if not stronger than the evidence presented to the jury in the Liberty Mutual-Sears case. Mr. Paul, a Certified Fire Investigator, was able to narrow the area of origin directly to the toaster oven. In addition, as part of his cause and origin investigation, Mr. Paul was able to rule out all other possible sources of ignition in the area of origin. The Luce's are also able to testify to an unremarkable history of the toaster oven, a fact relied on by Mr. Paul in his investigation and in reaching his conclusions. Moreover, the post-loss condition of the toaster oven, as observed by Mr. Paul and explained in depth in his report at pages 7-9, lends further credence to Mr. Paul's conclusion that a malfunction occurred. The fact that Mr. Paul has learned of 47 other incidents involving toaster oven fire as mentioned in defendant's motion provides further support for the proposition that a malfunction can occur and cause a fire. Moreover, a jury will be able to use its common knowledge that, absent a malfunction, toaster ovens do not self-ignite.

Because Allstate can rely on a significant amount of circumstantial evidence to prove a defect in this case, defendant's motion for summary judgment should be denied. The plaintiff has sufficient evidence to raise a jury question in this case. Because a jury could return a verdict for the plaintiff on the record in this case, summary judgment is not appropriate.

### C.    Mr. Paul's Proposed Testimony Comports With Daubert And Should Be Admitted

Defendant contends that certain opinions of Mr. Paul should be excluded on the grounds that his testimony is unreliable and was reached utilizing an investigative methodology inconsistent with generally accepted standards. To the extent that the factual record supports all of Mr. Paul's opinions in this case, his complete testimony should be admitted at trial. To the extent that this court would even entertain the arguments raised by the defendant in its motion, the plaintiff requests an evidentiary hearing at the time of trial to address through testimony any concerns that the defendant and/or the Court may have.

This Court is familiar with Daubert v. Merrell Dow Pharmaceuticals, Inc., supra, and its application. See Savage v. Scripto-Tokai Corp., 266 F. Supp. 2d 344 (D. Ct. 2003). The Federal Rules of Evidence assign to the trial court the task of performing a "gatekeeping" function with respect to expert testimony. See Advisory Committee Notes, 2000 Amendments to Federal Rule of Evidence 702. Rule 702 provides as follows:

> If scientific, technical or other specialized knowledge will assist
> the trier of fact to understand the evidence or to determine a fact in
> issue, a witness qualified as an expert by knowledge, skill,
> experience, training or education may testify thereto in the form of
> an opinion or otherwise, if (1) the testimony is based upon
> sufficient facts or data; (2) the testimony is the product of reliable
> principles and methods, and (3) the witness has applied the
> principles and methods reliably to the facts of the case.

In determining the admissibility of expert testimony, an evidentiary hearing, often called a Daubert hearing, may be held to determine whether or not the proffered expert testimony rests

on a reliable foundation and is relevant to the task at hand. Travelers Property & Casualty Corp. v. General Electric Co., 150 F. Supp. 2d 360 (D. Ct. 2001).

In Daubert, the Supreme Court set forth a list of non-exclusive factors that a trial court may consider in determining whether an expert's reasoning or methodology is reliable, including whether the theory or technique has been tested, whether the theory or technique has been subject to peer review and publication, the known or potential rate of error of the technique or theory when applied, the existence and maintenance of standards controlling the technique's operation, and whether the theory or method has been generally accepted in the scientific community. See Daubert, 509 U.S. at 593-94.

However, the test of reliability is a flexible one, and the four factors set forth in Daubert do not constitute a "definitive check list or test." Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999). Whether the Daubert factors are pertinent to assessing reliability in a particular case depends on the nature of the issue, the expert's particular expertise, and the subject of his or her testimony. Travelers Property & Casualty Corp., 150 F. Supp. 2d at 364. No single factor is necessarily dispositive of the reliability of particular expert's proposed testimony, and a review of case-law after Daubert demonstrates that rejection of expert testimony is the exception rather than the rule. Travelers Property & Casualty Corp., 150 F. Supp. 2d at 364, citing Advisory Committee Notes, 2000 Amendments, Federal Rule of Evidence 702.

In some cases, the reliability of an expert witness may be based upon his or her personal knowledge or experience.[3] Kumho Tire, 526 U.S. at 156. Thus, testimony from cause and origin

---

[3]    To the extent that Toastmaster has challenged the strength of Mr. Paul's credentials, it is clear that his education and engineering experience qualify him as having specialized knowledge in a field outside the knowledge of a common juror. Disputes as to the strength of an expert's credentials go to the weight, not the admissibility of the testimony. See McCullock v. H.B. Fuller Co., 61 F.3d 1038 (2d Cir. 1995).

investigators, based on their training, knowledge and experience, has been deemed to be reliable

under Daubert standards. See e.g. United States v. Black Wolf, 1999 U.S. Dist. LEXIS 20736

(D.S.D. December 7, 1999), attached as Exhibit "D." In that case, the government's cause and

origin investigator was challenged on Daubert grounds where the expert concluded that an

accelerant was used to start a fire. The court permitted the testimony, and in its discussion at

page 11, noted that:

> These factors [the Daubert factors], while perhaps pertinent, are
> not particularly helpful in analyzing whether Carlson's opinions
> and conclusions would assist a jury in deciding this case....He
> does not seek to offer testimony about an untested novel concept
> such as might be found in a case involving presentation of purely
> cutting-edge scientific testimony. Instead, he proposes to testify
> based on his vast fire investigation experience as to how and where
> the fire began. Thus, whether Carlson's proffered expert opinions
> have been subject to peer review, whether there is a known error
> rate and whether his theory or technique enjoy general acceptance
> within relevant scientific community are not particularly
> appropriate and useful considerations, especially in a case such as
> this one where orthodox scientific methodology is involved....

Other courts ruling upon the admissibility of cause and origin testimony have reached

similar conclusions. A cause and origin expert's proposed testimony has generally been deemed

reliable if the investigation has been performed in accordance with a recognized methodology

such as NFPA 921, which involves a process of elimination of potential ignition sources and

identification, even if circumstantially, of a credible ignition scenario. See, generally, Travelers

Property & Casualty Corp. v. General Electric Co., supra, 150 F. Supp. 2d at 366-67; Allstate

Insurance Company v. Hugh Cole Builder, Inc., 137 F. Supp. 2d 1283 (M.D. Al. 2001); Abu-

Hashish v. Scottsdale Insurance Company, 88 F. Supp. 2d 906 (N.D. Ill. 2000).[4]

---

[4]      Mr. Paul testified at his deposition that he is familiar with the NFPA 921, that it is a good
guide to fire investigation, and that he complied with this guide in this investigation. See
Defendant's Exhibit "B"; pg. 140. Mr. Paul's compliance with this recognized methodology in
his investigation, which is not challenged by Toastmaster, is alone sufficient to defeat

Thus, in <u>Travelers Property & Casualty Corp. v. General Electric Co.</u>, <u>supra</u>, the court permitted expert testimony on cause and origin from plaintiff's expert even though the expert did not <u>test</u> his theory experimentally, because the investigation was performed in accordance with the principles of NFPA 921. 150 F. Supp. 2d at 366-67.

In <u>Travelers</u>, Machnicki issued a three-page report purporting to study and analyze twenty-three different fires alleged to have been caused by design defects in certain General Electric clothes dryers. In the report, he opined that the design of the dryers permitted the accumulation of combustible lint, which ignited, causing the fires. GE moved to exclude Machnicki's testimony under <u>Daubert</u>. Following an evidentiary hearing, the court viewed Machnicki's qualifications, his report, and his investigation.

After terming his three-page expert report "woefully inadequate," 150 F. Supp. 2d at 365, the court nonetheless ruled that, given Machnicki's experience, knowledge and training, the methodology relied upon by Machnicki, <u>i.e.</u> analyzing burn patterns in the dryers and then ruling out potential alternative explanations for the fire (the same methodology applied in this case by Mr. Paul), was sufficient to meet the <u>Daubert</u> threshold of admissibility. 150 F. Supp. 2d at 366. Moreover, the court noted that, although Machnicki did not test his theory experimentally, his theory was capable of being tested, so that the defendant could employ such testing to undercut his testimony at trial. <u>Id</u>.

In another closely analogous case, <u>Allstate Insurance Company v. Hugh Cole Builder, Inc.</u>, <u>supra</u>, the court considered whether to permit the cause and origin testimony of an expert who was expected to testify that heat alleged to have been conducted by a galvanized pipe adjacent to a fireplace caused wood framing to ignite. Defendant challenged plaintiff's expert's

---

defendant's <u>Daubert</u> motion, where the circumstantial evidence supports Mr. Paul's conclusion that a malfunction in the toaster oven occurred thereby causing the fire.

10

proposed testimony under Daubert, arguing that the expert's conclusions were unreliable because they were not based on results of testing, and were "scientifically impossible," two of the arguments relied on by Toastmaster in this case. 137 F. Supp. 2d at 1287-1288.

The court in Allstate rejected defendant's challenges. First, the court reviewed defendant's claim that the plaintiff's expert's conclusion was unreliable because he did not examine any reference books or perform any satisfactory tests in support of his conclusion, and indeed did not even determine the ignition point of wood. Rejecting this contention, the court noted that NFPA 921 itself says that "heat conducted through a metal wall or along a pipe or metal beam can cause ignition of combustibles in contact with heated metals." 137 F. Supp. 2d at 1287-1288. The court determined that NFPA 921 has been subjected to peer review and is generally accepted in the scientific community, and, accordingly, supported the reliability of the expert's proposed testimony. Id.

The court in Allstate further noted that although the expert never determined the ignition point of wood, the expert testified that he did not need to know the ignition temperature of wood because "there was nothing else that could produce the heat to cause the fire." Id. at 1288. He further testified that he was aware that heat conducted through a pipe could cause fires because of past experience in fire investigation. Id. Finally, the expert testified that he reached his conclusions on the basis of his education and experience. Id. Based on all of the foregoing, the court rejected the defendant's contentions and permitted the expert to testify.

> In sum, the court finds that Boyer's theory that heat conducted through a metal pipe could ignite wood in contact with the metal pipe is a product of reliable principles and methods. Although the court finds that Boyer's test does not support his theory, the court finds that Boyer's education and experience, his discussions with other experts, and especially, the discussion of conductivity in NFPA 921 established that Boyer's testimony is a product of reliable principles.

137 F. Supp. 2d at 1289.

Next, defendant challenged that the expert's opinions were backed by sufficient facts or data, similar to the challenge here. Rejecting this contention, the court in <u>Allstate</u> noted that the role of Rule 702 of the Federal Rules of Evidence was <u>not</u> to decide facts. <u>Id</u>. Moreover, the court noted that even though the best evidence of what caused the fire had been destroyed by the fire itself, the expert was permitted to reach his conclusions by circumstantial evidence, <u>i.e.</u> explaining why no other alternate explanation accounts for the fire. <u>Id</u>. at 1290. Reflecting on contrary evidence <u>i.e.</u> evidence of other potential causes argued by defendant, the court noted that "even though this circumstantial evidence may undermine Boyer's testimony, Boyer has presented sufficient facts to support his opinion." <u>Id</u>., <u>citing</u> <u>Jones v. Otis Elevator Company</u>, 861 F.2d 655, 663 (11th Cir. 1988) ("the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility").

Finally, the court in <u>Allstate</u> considered the defendant's challenge to the expert's opinion in light of the fact that he had not fully eliminated the possibility of a large gas leak as a cause of the fire. <u>Id</u>. at 1291. The court rejected this challenge, ruling that the fact that the expert was unable to eliminate a large gas leak went to his credibility, rather than the admissibility of his testimony, in light of the fact that his proposed testimony was otherwise reliable. As the court explained, <u>Id</u>. at 1291:

> Although Boyer did not eliminate a large gas leak as a possible cause of the fire, Boyer's conductivity theory remains reliable. As required by Rule 702, Boyer has not rested his opinion simply on his authority as an expert, rather he relies upon his experience, explains how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.

> Moreover, the fact that a large gas leak remains uneliminated as a possible cause of the fire goes to the weight rather than the admissibility Boyer's testimony.

12

Citing Ambrosini v. Labarraque, 322 U.S. App. D.C. 19, 101 F.3d 129, 140 (D.C. Cir. 1996),

cert. denied, 520 U.S. 1205, 117 S. Ct. 1572, 137 L. Ed. 2d 716 (1997) (holding that the fact that

several possible causes for a fire might remain uneliminated goes to the weight rather than the

admissibility of the expert's testimony).

As discussed above, Mr. Paul's conclusion that the Toastmaster toaster oven

malfunctioned is supported by the facts of this case. Because the evidence supports such a

conclusion, it is immaterial as to whether Mr. Paul conducted any test to confirm his conclusion.

As noted by Judge Underhill in the Travelers case, supra., if a theory is capable of being tested,

the opposing party can use the results of such a test to undercut the testimony at trial. However,

even where there are adverse facts which may undermine Mr. Paul's testimony, those

underpinnings go to the weight of his opinion rather than to its admissibility.

If the Court were inclined to grant even a portion of defendant's motion to preclude than

the plaintiff respectfully requests that the motion be stayed pending the opportunity of a full

Daubert hearing at trial wherein Mr. Paul can explain to the Court in detail the methodology used

in reaching his opinions that a malfunction in the toaster oven caused the April 16, 2001 fire at

the Luce home.

## IV.    CONCLUSION

Defendant's challenge to Mr. Paul's testimony should be rejected. Mr. Paul's

investigation was performed in accordance with a recognized methodology, and there is

substantial support in Mr. Paul's training and experience as a fire investigator and engineer, as

well as from the facts of this case, to support his opinions in this case. Mr. Paul's proposed

testimony creates a genuine issue of material fact for trial in this matter, and, accordingly,

summary judgment should be denied, particularly where plaintiff can rely on circumstantial

evidence to prove a defect in defendant's product.

In the alternative, the plaintiff should be provided an opportunity at a <u>Daubert</u> hearing at the time of trial to establish through testimony the reliability of Mr. Paul's opinions and his qualifications to offer the same.

Respectfully submitted,

COZEN O'CONNOR

BY:_____

David W. Smith, Esquire
1900 Market Street
Philadelphia, PA  19103
215-665-2000
Attorney for Plaintiff

14

## CERTIFICATE OF SERVICE

I, David W. Smith, attorney for plaintiff, hereby certify that I am duly authorized to make this certification; that on June 3, 2004, I did cause a true and correct copy of Plaintiff's Opposition to Defendant's Motion to Preclude and for Summary Judgment to be delivered to counsel via first-class mail addressed as follows:

> Maureen Daneny Cox, Esquire
> Carmody & Torrance, LLP
> 50 Leavenworth Street
> P.O. Box 1110
> Waterbury, CT 06721
>
> Robert O. Lesley, Esquire
> Brian W. Fields, Esquire
> Sonnenschein, Nath & Rosenthal
> 4520 Main Street
> Suite 1100
> Kansas City, MO 64111

COZEN O'CONNOR

BY: _____

David W. Smith, Esquire

PHILA1\2074594\1 119627.000