IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY a/s/o JAMES F. LUCE, JR., and SIGURLIM LUCE,  Plaintiffs,  v.  TOASTMASTER INC.,  Defendant. | CIVIL ACTION NO. 303 CV 00604 (JBA)  Dated: June 21, 2004 |

**DEFENDANT TOASTMASTER INC.'S REPLY MEMORANDUM
OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN TESTIMONY
OF PLAINTIFFS' EXPERT WITNESS, FRED PAUL III, AND
FOR SUMMARY JUDGMENT**

Defendant Toastmaster Inc. ("Toastmaster") is entitled to summary judgment because Plaintiffs' expert, Fred Paul ("Paul"), is not qualified to render opinion testimony and because his opinion testimony is not sufficiently reliable. Consequently, without expert opinion testimony, Plaintiffs cannot prove a product defect, which is an essential element of their case. Toastmaster is, therefore, entitled to summary judgment as a matter of law.

I.  **Contrary To Plaintiffs' Assertion, Paul's Opinions Are Not Sufficient To Raise A Jury Question Because Plaintiffs Are Not Entitled To Have Any Disputed Issues Of Fact Resolved In Their Favor.**

Plaintiffs begin their Opposition by claiming Paul's opinions are "sufficient to raise a jury question" (Opp. at p. 3) because he "concluded that a malfunction of the toaster oven occurred which allowed it to overheat and ignite combustibles in close proximity to the toaster." (Opp. at p. 5.) Plaintiffs miss the point. Plaintiffs are not entitled to have any disputed issues of fact resolved in their favor. When deciding a motion for summary judgment, the court may consider only admissible evidence. *See Tamarin v. Adam Caterers, Inc.*, 13 F.3d 51, 53 (2nd Cir. 1993). Pursuant to Rule 104(a), the court must evaluate evidence for admissibility before it

{W1306741}

21184325\V-1

considers that evidence in ruling on a summary judgment motion. *Donnelly v. Ford Motor Co.*, 80 F. Supp. 2d 45, 47-48 (S.D.N.Y. 1999). If an expert's proposed testimony is excluded as inadmissible pursuant to Rule 702, the court must make the summary judgment determination on a record that does not include that evidence. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2nd Cir. 1997); *Donnelly*, 80 F. Supp. 2d at 47.

Here, the Court "need not view the facts and evidence pertaining to [Paul's] testimony in a light most favorable to the Plaintiff[s], but must scrutinize them in the same manner as any other evidentiary ruling." *Comer v. American Elec. Power*, 63 F. Supp. 2d 927, 930-31 (N.D. Ind. 1999) *citing Kumho Tire Co. v. Carmichael*, 119 S.Ct. 1167, 1176 (1999). Thus, Plaintiffs do not, and should not, receive the benefit of any inferences as claimed in their Opposition. (Opp. at pp. 3-5.) Instead, Plaintiffs are required to prove the admissibility of their experts' causation opinions by establishing that they satisfy the exacting *Daubert* standards. As discussed below, Paul's proposed testimony fails to meet that burden.

## II. Paul's Proposed Testimony Fails The *Daubert* Standards Of Reliability And Relevance.

Plaintiffs do not dispute that under *Daubert*, an expert witness must establish that his or her qualifications and testimony "fit" the subject matter of the case. 509 U.S. at 591; *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 150 (1997). *See, e.g., Weisgram v. Marley Co.*, 169 F.3d 514, 519 (8th Cir. 1999), *aff'd*, 528 U.S. 440 (2000).

The facts and expert opinions proffered in *Weisgram*, cited in Toastmaster's opening brief, show a similar lack of "fit" in a fire case. In *Weisgram*, under North Dakota law, plaintiff alleged a baseboard heater malfunctioned and ignited a nearby sofa. Like Connecticut, North Dakota law provides that, under some circumstances, a defect may be inferred from proof that the product did not perform as intended by the manufacturer. *Herman v. General Irrigation Co.*, 247 N.W.2d 472, 478 (N.D. 1976). The *Weisgram* plaintiff proffered three experts to support

{W1306741}   - 2 -

his case: Dan Freeman (the city's fire investigator), Ralph Dolence (a fire investigator and technical forensic expert) and Sandy Lazarowicz (a metallurgist). The District Court entered judgment upon a jury verdict for plaintiff and the defendant manufacturer appealed. The Eight Circuit held that the testimony of the three experts was unreliable and vacated and directed judgment for the manufacturer. The Supreme Court, Justice Ginsburg, affirmed.

Freeman opined that a baseboard heater malfunctioned, overheated and radiant heat ignited a nearby couch. 169 F.3d at 518. Freeman admitted that he was "not an electrical expert," that he did not "know what happened with the heater," and "believe[d] that we had a runaway of that heater." *Id.* Without any testing or analysis, Freeman claimed the baseboard heater generated sufficient heat to ignite nearby combustibles. *Id.* The Eight Circuit held that although Freeman was qualified as a fire cause and origin expert, there was "no question that he was not qualified to offer an opinion that the Weisgram heater malfunctioned" and should not have been permitted to testify. "Freeman's qualifications as a fire investigator did not give him free rein to speculate before the jury as to the cause of the fire by relying on inferences that have absolutely no record support." *Id.* at 519.

Dolence testified that the heater's thermostat, after fifteen years of operating without incident, suddenly did not function to shut the heater off. *Id.* Significantly, "he could not identify what caused the heater to run away and that he had 'no idea what caused the thermostat to fail.'" *Id.* Accordingly, the court held that his testimony was unreliable under Rule 702 because there was no reasonable factual basis for his opinions and that he offered "nothing more than pure conjecture as to whether or not the Weisgram heater was defective." *Id.*

Lazarowicz examined the heater's thermostat contacts and an exemplar with the same type of contacts. He testified that the contacts were defective, which prevented the heater from shutting off. *Id.* at 520. The court noted that even though Lazarowicz was an expert in the

properties of metals, he "formulated his theory knowing practically nothing about the Weisgram heater, or any other baseboard heater for that matter." *Id.* Lazarowicz was "unaware of the heater's wattage or the amperage it drew, and therefore could not say if the thermostat contacts could have reached a high enough temperature to melt the metal and to form a weld before the fire. . . . He performed no tests to determine whether it was even theoretically possible that the contacts could get sufficiently hot to weld during operation of the heater." *Id.* As a result, the court held his opinions amounted to nothing more than "subjective belief or unsupported speculation." *Id. quoting Daubert*, 509 U.S. at 590, 113 S.Ct. 2786.

### A.     Paul lacks qualifications to opine that the toaster oven malfunctioned.

Here, Paul's proposed opinion that the toaster oven malfunctioned suffers from the same "rank speculation" that was found with the experts' opinions in *Weisgram*. 169 F.3d at 520. As a starting point, Plaintiffs' Opposition is completely silent on any facts that can establish Paul's alleged expertise or qualifications "fit" the issues in this case, i.e., that he is qualified to render expert opinion that a malfunction of the toaster oven caused the fire. Paul claims the toaster oven must have malfunctioned by suddenly turning itself on and then generating sufficient radiant heat to ignite either the cabinets above it (if you believe his report) or the wall behind it (if you believe his deposition testimony). Plaintiffs cite *Kumho Tire*, for the unremarkable proposition that "[i]n some cases, the reliability of an expert witness may be based upon his or her personal knowledge or experience." (Opp. at p. 8.) This statement obviously distinguishes Paul's alleged qualifications because, other than this case, he has no personal knowledge or actual experience with toasters ovens.

For example, it is undisputed that Paul is *not* an electrical engineer, has no prior experience examining toaster ovens, has no prior experience with investigating toaster oven fires,

has no electronics background in small appliances[1], does not know the names of the "electronic things" that allegedly turned on and overheated, does not know the exterior temperature of the subject toaster oven when operating continuously, does not know the highest temperature the subject toaster oven can reach when heated for three hours continuously, has no knowledge about the temperatures the subject toaster oven could reach, and cannot not draw a circuit diagram for the subject toaster oven. *See* Defendant's Statement of Undisputed Facts Nos. 11, 21-22, 30, 38, 43-45, 55.

Paul clearly is not qualified to render expert opinion because he fails to pass the basic minimum education or experiential competency in the field in which he proposes to testify. *Weisgram*, 169 F.3d at 520. Because he is unqualified, Paul's opinion testimony about the malfunction of the toaster oven's electronic control board is inadmissible.

**B.   Paul's methodology concerning the cause and origin of the fire does not comport with NFPA 921 and is unreliable.**

Plaintiffs also rely on Paul as their cause and origin expert, who claims he "determined that the fire originated at a point on the kitchen counter-top where Mrs. Luce kept her toaster oven." (Opp. at 4.) This is the same counter-top area where the microwave and the duplex outlet were located. *See* Defendant's Statement of Undisputed Facts Nos. 73, 74. Contrary to Plaintiffs' assertion on page 3, footnote 2 of their Opposition, Toastmaster has challenged Paul's qualifications and methodology to offer opinion testimony on the cause and origin of the fire. *See* Toastmaster's opening memorandum of law, pages 4-6, 15-18. Nonetheless, Toastmaster agrees that fire investigations performed in accordance with NFPA 921 are reliable under the

---

[1] Even though Plaintiffs denied this fact, No. 22, Paul clearly testified to the contrary. "I do not have an electronics background in small appliances, even though I know I have had electronic courses." Paul Depo. at 51, lns. 7-9. The electronics course, not courses, Paul refers to is the one he took in 1972 at Wentworth. *Id.* at 51, lns. 11-13. There is no testimony from Paul that he has any experience with small appliances or toaster ovens.

{W1306741}                                      - 5 -

*Daubert* standards. Toastmaster strongly disagrees, however, that Paul "complied with this guide in this investigation." (Opp. at 9, n. 4.)

First, Paul agrees with NFPA 921's requirement that before it can be concluded that a particular appliance caused a fire, it should be established how the appliance generated sufficient heat to cause ignition. *See* Defendant's Statement of Undisputed Facts No. 82. Paul, however, has no knowledge at all about the temperatures the toaster oven could reach, or the ignition temperature of the combustibles that allegedly were the first fuel for the fire. *Id.* Nos. 33, 43-45. Instead, Paul merely assumed that the toaster oven could transmit sufficient heat to ignite the wall (*id.* No. 68) and even admits that his theory is necessarily incorrect if it can be shown that the toaster oven cannot transmit enough heat to ignite the wall behind it. *Id.* at 69. Even if the Court is satisfied with Paul's qualifications as a fire investigator, which Toastmaster denies, Paul's methodology is unreliable. Paul has done no testing to support his opinions and conclusions, has not done any testing on the toaster oven's printed circuit board, is aware of no support in any professional literature concerning fire investigation to support his theory that the toaster oven could ignite the wall behind it or the cabinets above it, knows of no way to develop a rate of error for his testing methodology, and does not know if his theory concerning the toaster oven's ability to ignite the wall behind it has general acceptance among fire investigators. *Id.* Nos. 47, 56, 91, 92, 94.

The case of *Booth v. Black & Decker, Inc.*, 166 F. Supp. 2d 215 (E.D. Penn. 2001), is instructive. In *Booth*, the court granted summary judgment to the defendant on plaintiff's products liability claims stemming from a house fire allegedly caused by a toaster oven. The court granted summary judgment after concluding that the plaintiff's causation expert's testimony must be excluded pursuant to *Daubert*. In doing so, the court noted:

> [The expert] asserted that his method of investigating the cause of the fire was a standard method applied by others in the field, but he produced no

{W1306741}

persuasive, objective evidence that his method was subject to peer review, had a known or potential rate of error, could be measured against existing standards, or was generally accepted, as required by Rule 702, *Daubert, Kumho Tire,* and *Oddi.* . . . Given NFPA 921's comprehensive and detailed treatment of fire investigations, it appears that NFPA 921 might have contained a methodology upon which [the expert] could have relied, but he failed to state that he applied any specific methodology contained in NFPA 921. . . . Furthermore, [the expert] pointed to nothing in that document that provided a methodology for investigating the hypothesized cause of the fire in this case. *Id.* at 220.

Here, as in *Booth*, Paul's purported reliance on NFPA 921 is obviously unavailing because he simply assumes the toaster oven could transmit sufficient radiant heat to ignite combustibles. The absence of any generally accepted methodology in support of his conclusions requires that Paul's testimony be excluded. Moreover, Paul's "cause and origin" opinion is based entirely on his belief that the toaster oven "malfunction[ed]" which "allowed the appliance to overheat combustibles that were too close to the appliance." (Paul Report at 10-11.) Thus, Paul's cause and origin opinion rests on his allegation that there was a malfunction in the toaster oven, which he is unqualified to opine. Paul's methodology is, therefore, unreliable.

### C. Paul's lack of reliable method under the *Daubert* factors.

Notwithstanding Paul's lack of qualifications, Plaintiffs are correct that the factors mentioned in *Daubert* to determine the admissibility of expert testimony are not a "definitive checklist." (Opp. at 8.) In their Opposition, Plaintiffs do not dispute that Paul's theories fail the *Daubert* test because they have not been subjected to any peer review or publication, he does not know his theories' potential error rate, he could not cite any standards controlling his methodology, and his theories are not generally accepted in the scientific community. The fact that Plaintiffs do not even attempt to address any of the *Daubert* factors speaks volumes about the baselessness of Plaintiffs' position.

### D. Paul's lack of reliable method other than the *Daubert* factors.

Courts apply greater scrutiny to an expert opinion that was developed solely for litigation purposes. *See Daubert v. Merrill Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995). Plaintiffs do not dispute that Paul has not researched or analyzed appliance failures in a non-litigation context. Additionally, expert opinion based on faulty assumptions is not reliable. Assumptions are faulty when they are unsupported in the record. *See, e.g., Weisgram*, 169 F.3d at 519. Again, Plaintiffs do not dispute that Paul makes critical assumptions without any record support that the subject toaster oven's electronic control board can spontaneously turn on and then generate sufficient radiant heat to start a fire. Thus, additional non-*Daubert* factors supports the conclusion that Paul's testimony is unreliable.

### III. Contrary To Plaintiffs' Assertion, Plaintiffs Must Prove A Specific Defect In The Toaster Oven With Expert Testimony And Their Failure To Do So Requires Summary Judgment In Toastmaster's Favor.

Plaintiffs boldly claim that they need not prove a specific defect in the toaster oven and instead, argue that such proof may be inferred from evidence that the toaster oven did not perform as intended. (Opp. at 5-7.) In support, Plaintiffs rely on *Liberty Mutual Insurance Co. v. Sears, Roebuck and Co.*, 35 Conn. Supp. 687, 406 A.2d 124 (1979), which is manifestly inapposite to the facts of this case. First, neither *Liberty Mutual* nor any of the other cases Plaintiffs cite in their Opposition that rely on *Liberty Mutual*, were decided under the federal *Daubert* standard. Second, *Liberty Mutual* clearly states that "[i]n the absence of *other identifiable causes*, evidence of malfunction is sufficient evidence of a defect under § 402A." (emphasis added) 406 A.2d at 1256. Paul testified that there were other identifiable, potential causes of this fire: the microwave (which was sitting directly to the left of the toaster oven but which Paul destroyed before Toastmaster had an opportunity to examine it), and the electrical outlet for the microwave and the toaster oven. *See* Defendants Statement of Undisputed Facts

Nos. 73, 76. Paul agrees that microwaves and duplex outlets can be competent ignition sources. *Id.* Nos. 88, 89.

In *Liberty Mutual*, the plaintiff alleged that a defective television set burst into flames causing a fire. The plaintiff could not, however, point to a specific defect in the charred remains of the television set. Discussing *Liberty Mutual*, the Rhode Island Supreme Court stated, "[n]o one could have discovered the precise defect that must have existed in the television set because the fire reduced the set to ashes." *Scittarelli v. Providence Gas Co.*, 415 A.2d 1040, 1047 (RI 1980). *Liberty Mutual* is clearly distinguishable from this case. Plaintiffs here had ample opportunity after the fire to inspect, and did inspect, the toaster oven. Indeed, Paul testified that the circuit board and components were not consumed in the fire. "But the circuit board itself is still in -- if I had that right here now, the circuit board you would be able to look at it. . . . There's signs of heating, but I don't think it burned. It certainly wasn't consumed." (Paul Depo. at p. 143, lns. 18-20, p. 144, lns 1-2.) *See also* Defendants Statement of Undisputed Facts No. 84.

Unlike the television set in *Liberty Mutual*, Paul was able to examine the toaster oven's circuit board. Yet, Paul does not contend that there was a specific type of defect or failure in the toaster oven, cannot identify any defect in the printed circuit board of the toaster oven, and has no opinion on whether there was a design or manufacturing defect in the toaster oven. *See* Defendant's Statement of Undisputed Facts Nos. 51, 54, 65. As the Rhode Island Supreme Court pointed out, "[t]he circumstantial evidence of a defect in *Liberty Mutual* was so overwhelming that the inference that a defect existed was inescapable. In the case before us, however, the lack of evidence of a defect left the question open to speculation. Speculation will not suffice as proof of a defect."

Additionally, in *Liberty Mutual*, the court stated that "[t]he mere fact that there is sufficient evidence to infer a defect does not necessarily mean that there is sufficient evidence to

infer that the defect existed at the time of sale. Normally the questions of when and where a defect originated will be left to the jury. . . . Where the answers to these questions would be based only on speculation or conjecture, the answers cannot stand." (citations omitted) 406 A.2d at 1257. Here, Paul admits that he does not know whether, at the time of the fire, the toaster oven was in the same condition as when it came from the factory. *See* Defendant's Statement of Undisputed Facts No. 66.

Thus, under *Liberty Mutual*, Plaintiffs are required to present expert testimony concerning a specific defect of the toaster oven and are also required to present expert testimony that the alleged defect caused the fire. For example, in *Booth v. Black & Decker, Inc.*, 166 F. Supp. 2d 215 (E.D. Penn. 2001), the plaintiff argued that he be allowed to proceed under a malfunction theory even if his expert was stricken. *Id.* at 220, n.5. The court noted that "where there are multiple possible causes, a plaintiff must at the very least establish a *prima facie* case of causation. . . . Without expert testimony that the toaster oven might have caused the fire, plaintiff cannot present a *prima facie* case . . . in order to survive summary judgment on the manufacturing defect issue, even under the more forgiving malfunction theory." *Id. See also Pappas v. Sony Electronics, Inc.*, 136 F. Supp. 2d 413, 427 (W.D. Penn. 2000) (striking plaintiff's expert under malfunction theory where alleged evidence of malfunction consisted of testimony that fire started in the area where both a television and VCR were located). Here, as in *Booth and Pappas*, Paul's testimony must be excluded and Toastmaster is entitled to summary judgment as a matter of law.[2]

---

[2] Plaintiffs request that in the event the Court is inclined to grant Toastmaster's motion, the Court should hold a "full evidentiary *Daubert* hearing at the time of trial." (Opp. at 1.) There is no need for a *Daubert* hearing because Paul's proposed opinions so utterly lack the reliability and relevance standards mandated under the Federal Rules of Evidence and *Daubert*. Nonetheless, if the Court believes a hearing is necessary, it should be held before, not at, the time of trial.

{W1306741}                                - 10 -

Dated: June 21, 2004

                            CARMODY & TORRANCE, LLP
                            Attorneys for Defendant Toastmaster Inc.

                            By: /s/ Isabella S. Murray
                            Isabella S. Murray (ct21224)
                            50 Leavenworth Street
                            P.O. Box 1110
                            Waterbury, CT 06721-1110
                            Telephone: (203) 573-1200
                            Facsimile: (203) 575-2600

                            *Of Counsel*
                            SONNENSCHEIN NATH & ROSENTHAL
                            Robert O. Lesley
                            Brian W. Fields
                            Lynnette L. Siegel
                            4520 Main Street, Suite 1100
                            Kansas City, Missouri 64111
                            Telephone: (816) 460-2400
                            Facsimile: (816) 531-7545

## CERTIFICATE OF SERVICE

I certify that a copy of the above and foregoing document was served by first-class mail, postage prepaid, on the 21st day of June, 2004, addressed to:

Margaret Ralphs
LAW OFFICES OF STUART G. BLACKBURN
Two Concorde Way
P.O. Box 608
Windsor Locks, CT 06096
Telephone: (860) 292-1116

and

David W. Smith
COZEN O'CONNOR
1900 Market Street
Philadelphia, PA 19103
Telephone: (215) 665-2103

ATTORNEYS FOR PLAINTIFF

                            /s/ Isabella S. Murray
                            Attorney for Defendant